[710 NYS2d 641]

MICHAEL T. CONVEY et al., Respondents, v CITY OF RYE SCHOOL DISTRICT et al., Appellants-Respondents, and WENDY LAURA et al., Respondents-Appellants.

Second Department, July 17, 2000

APPEARANCES OF COUNSEL

*Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger,* Garden City (*Kathleen D. Foley* and *Christine Gasser* of counsel), for appellants-respondents.

*Marshall Conway & Wright, P. C.,* New York City (*Joseph J. Andriola* of counsel), for respondents-appellants.

*Clark, Gagliardi & Miller, P. C.,* White Plains (*Lawrence T. D'Aloise, Jr.,* and *Angela Morcone Giannini* of counsel), for respondents.

## OPINION OF THE COURT

H. MILLER, J.

On October 31, 1996, Ian Convey, a 16-year-old sophomore at Rye High School (hereinafter the School), was seriously injured when he was hit in the eye by an object, alleged to be a twig, thrown by a fellow student, the defendant Peter Laura. The incident occurred during lunch recess when the boys were on the school's front lawn throwing pine cones at each other in friendly horseplay. Ian and his parents subsequently commenced this action against Peter and his mother, Wendy Laura, and against the City of Rye School District, City of Rye Board of Education, and Rye High School (hereinafter the School defendants), alleging that Peter had negligently thrown a "wooden object" at Ian, and that the School had failed to properly supervise the students and maintain its grounds.

The primary issues raised on this appeal are whether Ian assumed the risk of the injury he sustained by engaging in the act of tossing pine cones at his friend, and whether the School defendants can be held liable on the theory that they negligently supervised the students where it is undisputed that neither boy had a history of prior disciplinary problems, and that their horseplay lasted for less than one minute. For the reasons which follow, we agree with the Supreme Court that there are triable issues of fact as to whether Ian assumed the risk of injury while playing with Peter. Therefore, the Supreme Court properly declined to award summary judgment to the defendants Peter Laura and Wendy Laura. However, there is no basis for imposing liability against the School defendants, and accordingly we grant their motion for summary judgment.

On the date of the incident, Ian approached Peter and another boy in front of the School during lunch hour, when

students are allowed to gather on the front lawn. Although Rye High School employed two security guards who patrolled the interior and exterior of its premises, there were no security guards in front of the School at the time of the incident.

As the three youths were talking and laughing, Ian picked up a couple of seed pods or pine cones from the ground, and tossed them at Peter's legs. The pine cones, which had fallen from a nearby tree, were oval shaped, about two inches long, and soft because they had not "bloomed." During the chase which ensued, Peter threw a twig at Ian, which hit Ian in the left eye when he turned around. Ian was approximately 20 feet from Peter when he was hit. Less than one minute elapsed from when Ian threw the first pine cone until he was injured. As a result of this incident, Ian has permanently lost sight in his left eye.

At his deposition, Ian admitted that he initiated the horseplay by throwing two pine cones at Peter's legs. However, Ian's account of the incident differed from Peter's account in several key respects. Peter stated at his deposition that during the incident he threw four pine cones and one twig, about the size of a pen, which he picked up inadvertently with the last pine cone. Ian, on the other hand, stated that Peter threw a foot-long stick at him earlier in the incident, which missed him. Another discrepancy is that while Ian alleged that he threw pine cones only at Peter's legs, Peter stated that he was hit in the chest with one of the pine cones.

After depositions were completed, the School defendants moved for summary judgment dismissing the complaint on the ground that they had provided adequate supervision to their students, and that any alleged inadequacy was not a proximate cause of Ian's injuries. In support of the motion, the School defendants also submitted evidence that they contracted with a landscaper to maintain the school grounds on a weekly basis. The defendants Wendy Laura and Peter Laura then cross-moved for summary judgment, arguing that the doctrine of assumption of the risk barred recovery because Ian had willingly engaged in the horseplay with her son which precipitated the events leading to his injury. The Supreme Court denied both the motion and cross motion on the ground that issues of fact existed as to the School defendants' alleged negligent supervision of their students and Ian's claimed assumption of the risk. We now modify to award summary judgment to the School defendants.

■ Turning first to the issue of assumption of the risk, we find that the Supreme Court properly declined to award judg-

ment as a matter of law to the Lauras. It is well settled that voluntary participants in a sport or recreational activity "consent to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (*Morgan v State of New York*, 90 NY2d 471, 484; *see, Turcotte v Fell*, 68 NY2d 432, 439). The recreational activities encompassed by the doctrine of assumption of the risk include games as well as frolic (*see, Bierach v Nichols*, 248 AD2d 916 [apple-throwing]; *Kelly v Great Neck Union Free School Dist.*, 192 AD2d 696 ["ring-o-levio" game played on school grounds]). A participant is held to have consented to those injury-causing events which are known, apparent, or reasonably foreseeable consequences of participation (*see, Turcotte v Fell, supra*, at 439). For the assumption of risk doctrine to apply, it is not necessary that the injured plaintiff foresee the exact manner in which his or her injury occurred, "so long as he or she is aware of the potential for injury of the mechanism from which the injury results" (*Maddox v City of New York*, 66 NY2d 270, 278).

However, participants in a game do not assume the risk of "reckless or intentional conduct * * * or concealed or unreasonably increased risks" (*Morgan v State of New York, supra*, at 485). A participant does not assume the risk of another participant's negligent play which enhances the risk (*see, Martin v Luther*, 227 AD2d 859; *Jackson v Livingston Country Club*, 55 AD2d 1045). In assessing whether a defendant has violated a duty of care in the context of an injury sustained during a sport or game, the trier of fact must determine whether the defendant created a unique condition " 'over and above the usual dangers that are inherent in the sport' " (*Morgan v State of New York, supra*, at 485 [emphasis supplied], quoting *Owen v R.J.S. Safety Equip.*, 79 NY2d 967, 970; *Turcotte v Fell, supra*).

On the record presented, we cannot conclude as a matter of law that the injured plaintiff was aware of, appreciated, and voluntarily assumed the risks from which his injuries arose (*see, Taylor v Massapequa Intl. Little League*, 261 AD2d 396; *Petretti v Jefferson Val. Racquet Club*, 246 AD2d 583). Viewing the evidence in the light most favorable to the plaintiffs, a jury could find that the risks Ian assumed in throwing soft pine cones at the lower half of his classmate's body did not encompass the risk that he would be hit in the eye with a stick or twig. A jury could also find that the risk of being hit in the eye with a stick was not inherent in the activity of throwing

soft pine cones, and that "an unreasonably increased risk" was involved once Peter abruptly deviated from the good-natured horseplay by throwing twigs at the upper portion of Ian's body. While Peter testified that he inadvertently picked up the twig with the pine cone, Ian testified that Peter threw a foot-long stick earlier in the incident which missed hitting him. Accordingly, since there are questions of fact as to whether Ian assumed the risk of the injury he sustained, the Lauras' motion for summary judgment was properly denied.

We reach a different conclusion, however, with respect to the School defendants' motion for summary judgment, because the record establishes that Ian's injuries were not caused by a lack of adequate supervision or negligent maintenance of the School premises.

■ Although schools are under a duty to adequately supervise the students in their charge and will be held liable for foreseeable injuries proximately related to the absence of adequate supervision (*see, Mirand v City of New York,* 84 NY2d 44, 49), they are not insurers of the safety of their students, for they cannot be reasonably expected to continuously supervise and control all of the students' movements and activities (*see, Mirand v City of New York, supra,* at 49). Moreover, constant supervision of high school students is not required (*see, Barretto v City of New York,* 229 AD2d 214, 219; *Garcia v City of New York,* 222 AD2d 192, 196). In order to find that a school has breached its duty to provide adequate supervision in the context of injuries caused by the acts of fellow students, the plaintiff must show that the school "had sufficiently specific knowledge or notice of the dangerous conduct which caused injury; that is, that the third-party acts could reasonably have been anticipated" (*Mirand v City of New York, supra,* at 49). Actual or constructive notice to the school of prior similar conduct is generally required because school personnel cannot reasonably be expected to guard against all of the sudden, spontaneous acts that take place among students on a daily basis (*see, Mirand v City of New York, supra*). An injury caused by the impulsive, unanticipated act of a fellow student ordinarily will not give rise to a finding of negligence absent proof of prior conduct that would have put a reasonable person on notice to protect against the injury-causing act (*see, Mirand v City of New York, supra,* at 49; *Ohman v Board of Educ.,* 300 NY 306, 310).

In the case before us, the School defendants sustained their burden of establishing that they had no actual or constructive

notice of similar conduct by other students (*see, Mirand v City of New York, supra,* at 49; *Lawes v Board of Educ.,* 16 NY2d 302, 305; *Gattyan v Scarsdale Union Free School Dist. No. 1,* 152 AD2d 650, 651-652). At an examination before trial, the School's assistant principal testified that he was not aware of any pine cone throwing that occurred on the premises. Furthermore, while Ian and Peter both testified that they observed students throwing pine cones on school property on prior occasions, there was no evidence that any other students ever sustained injuries as a result of such conduct. Neither boy had a history of prior disciplinary problems, and there had been no previous altercations between them.

Moreover, there is no evidence that any purported negligence on the part of the School was the proximate cause of the injuries sustained. According to the deposition testimony of both students, the incident lasted less than one minute. Where an accident occurs in so short a span of time that even the most intense supervision could not have prevented it, any lack of supervision is not the proximate cause of the injury and summary judgment in favor of the School defendants is warranted (*see, Baker v Eastman Kodak Co.,* 34 AD2d 886, *affd* 28 NY2d 636; *Bua v South Shore Skating,* 193 AD2d 774; *Totan v Board of Educ.,* 133 AD2d 366, 368).

■ There is also no basis for imposing liability against the School defendants on the theory that the School negligently maintained its premises. During his deposition, the assistant principal testified that an outside contractor cleaned the grounds of the school on a weekly basis. Furthermore, the maintenance agreement between the school and the contractor required the contractor to remove "all vegetative matter, such as leaves and broken branches." Thus, the School established that it exercised reasonable care in its maintenance of the property (*see, Basso v Miller,* 40 NY2d 233, 241; *Elardo v Town of Oyster Bay,* 176 AD2d 912, 913). Moreover, even if the School's failure to remove every pine cone and twig from the grounds constituted a breach of its duty to maintain the premises in a reasonably safe condition, as a matter of law, there is no causal connection between any alleged breach and the injury sustained by Ian because Peter Laura's intervening act of throwing the twig constituted a superseding cause (*see, Elardo v Town of Oyster Bay, supra,* at 914). Since there is no basis for imposing liability against the School defendants for negligent supervision or negligent maintenance, the Supreme Court erred in denying their motion for summary judgment.

Accordingly, the order appealed from is modified by deleting the provision thereof denying the School defendants' motion for summary judgment and substituting therefor a provision granting the motion and dismissing the complaint and all cross claims insofar as asserted against the School defendants. As so modified, the order is affirmed.

O'BRIEN, J. P., JOY and FLORIO, JJ., concur.

Ordered that the order is modified, on the law, by deleting the provision thereof denying the motion of the defendants City of Rye School District, City of Rye Board of Education, and Rye High School, for summary judgment dismissing the complaint and all cross claims insofar as asserted against them and substituting therefor a provision granting the motion; as so modified, the order is affirmed, without costs or disbursements, the complaint is dismissed insofar as asserted against those defendants, and the action against the remaining defendants is severed.